UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IVERNON D. WISEMAN,

        Plaintiff,

   v.                                CAUSE NO. 3:20-CV-620 DRL-MGG

WILKINSON *et al.*,

        Defendants.

OPINION AND ORDER

Ivernon D. Wiseman, a prisoner without a lawyer, filed a complaint alleging he had heart value replacement surgery on March 30, 2020, because it was infected with streptococcus bacteria. ECF 2. He alleges the infection was contracted during a tooth extraction at the Westville Correctional Facility on August 19, 2019. *Id*. The complaint was screened pursuant to 28 U.S.C. § 1915A and found to not state a claim, but Mr. Wiseman was granted leave to file an amended complaint, which he has now done. ECF 6 and 10. The amended complaint is not meaningfully different from the original, so this case will be dismissed.

"A document filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Wiseman alleges Dr. Wilkinson began extracting one of his teeth on August 19, 2019, but stopped and called Dr. Pearcy to finish when the work became too complicated for him to complete. He alleges when Dr. Pearcy arrived, he pulled gloves from his pocket and used the same dental tools Dr. Wilkinson had been using. He alleges he was not prescribed an antibiotic and there was no dental assistant present to suction his mouth during the procedure. He alleges a chip from another tooth went down his throat and neither dentist followed up to see if he had an infection.

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Mr. Wiseman argues Dr. Wilkinson should not have begun the procedure because he was a dentist – not an oral surgeon. However, dentists are trained to perform "surgical procedures on the teeth, bone and soft tissues of the oral cavity." *Dentists: Doctors of Oral Health*, American Dental Association.[1] Attempting to extract the tooth was not a substantial departure from accepted professional judgment. Nor was it deliberately

---

[1] *See* https://www.ada.org/en/about-the-ada/dentists-doctors-of-oral-health.

2

indifferent for Dr. Wilkinson to call Dr. Pearcy, an oral surgeon, to complete the procedure when he thought it was too complicated for him to finish.

Mr. Wiseman argues Dr. Pearcy should not have used gloves he carried in his pocket. "For surgical procedures [including the extraction of teeth, a dentist should], perform a surgical hand scrub before putting on sterile surgeon's gloves." *Summary of Infection Prevention Practices in Dental Settings*, Centers for Disease Control and Prevention.[2] Based on this guidance, Dr. Pearcy should have used sterile gloves when he was extracting Mr. Wiseman's tooth, but "[i]n the inadequate medical care context, deliberate indifference does not equate to medical malpractice; the Eighth Amendment does not codify common law torts. It is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Dominguez*, No. 19-1727, 2021 WL 3123756, 5 (7th Cir. July 23, 2021) (quotation marks, citations, parenthesis, and brackets omitted.). Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). Here, the complaint does not allege facts from which it can be plausibly inferred that Dr. Pearcy used gloves from his pocket because he wanted to harm Mr. Wiseman.

---

[2] *See* https://www.cdc.gov/oralhealth/infectioncontrol/pdf/safe-care2.pdf.

Mr. Wiseman argues Dr. Pearcy should not have used the same dental tools previously used by Dr. Wilkinson to attempt to extract his tooth. The American Dental Association provides that "dental instruments are cleaned and sterilized between patients." *American Dental Association Statement on Infection Control in Dental Settings*, American Dental Association.[3] Continuing to use the same dental tools does not plausibly allege Dr. Pearcy was deliberately indifferent.

Mr. Wiseman argues Dr. Pearcy should not have chipped a neighboring tooth during the extraction, but "[d]amage to other teeth" is a well-recognized risk of tooth extractions. He alleges Dr. Pearcy should have had a dental assistant suction his mouth during the procedure and prevent the chip from going down his throat. Chipping a tooth and letting it go down Mr. Wiseman's throat was understandably upsetting. However, neither plausibly allege deliberate indifference.

Mr. Wiseman argues he should have been prescribed an antibiotic as a part of the tooth extraction to prevent his heart valve from becoming infected. In the original screening order, the court suggested Mr. Wiseman was describing endocarditis, "an inflammation of the inner lining of the heart." *Endocarditis*, U.S. National Library of Medicine.[4] The amended complaint does not suggest otherwise. He says he contracted streptococcus—a type of bacteria. "[B]acterial endocarditis[] occurs when germs enter your heart. These germs come through your bloodstream from another part of your body,

---

[3] *See* https://www.ada.org/en/press-room/news-releases/2017-archives/august/statement-on-infection-control.

[4] *See* https://medlineplus.gov/endocarditis.html.

often your mouth. Bacterial endocarditis can damage your heart valves." *Endocarditis*, U.S. National Library of Medicine.[5]

> For patients whose heart conditions put them at the highest risk for adverse events from [endocarditis], the American Heart Association (AHA) recommends antibiotics before certain dental procedures. These include procedures that involve manipulation of gingival tissue or the periapical region of teeth, or perforation of the oral mucosa. However, for most patients, antibiotics are not needed.

*Endocarditis Fact Sheet*, American Heart Association.[6]

> The practice of routinely giving antibiotics to patients at risk for endocarditis prior to a dental procedure is not recommended **EXCEPT** for patients with the highest risk of adverse outcomes [because] only a small number of [endocarditis] cases might be prevented by antibiotic prophylaxis prior to a dental procedure [so it] should be reserved **ONLY** for patients with cardiac conditions associated with the highest risk . . .."

*Endocarditis Wallet Card*, American Heart Association.[7]

Mr. Wiseman says he entered the Indiana Department of Correction on August 31, 2018, in good health with no heart problems. ECF 10 at 6. The complaint does not describe any reason why Dr. Wilkinson or Dr. Pearcy would have believed Mr. Wiseman was at the highest risk for a heart infection. As such, if they had prescribed an antibiotic, that would have been contrary to the recommendations of the American Heart Association. He alleges neither dentist followed up to see if he had an infection, but the complaint

---

[5] *See* https://medlineplus.gov/endocarditis.html.

[6] See https://www.heart.org/-/media/data-import/downloadables/0/8/2/pe-abh-*what*-is-infective-endocarditis-ucm_300297.pdf.

[7] *See* https://www.heart.org/-/media/data-import/downloadables/c/b/3/pe-pdf-chd-infectiveendocarditiswalletcard-ucm_307644.pdf?la=en&hash=5820A3F9A2A8D4CFA104B1CA4BF8C386831DA712.

provides no facts to suggest why they would have believed that was necessary. Therefore, the complaint does not state a claim against either Dr. Wilkinson or Dr. Pearcy.

Mr. Wiseman also names three other defendants who appear to have been involved in diagnosing and treating his heart condition. When the court reviewed similar claims in his original complaint, the screening order told him,

> it is unclear how they were involved with his care and what he believes they did wrong from the time he put in a healthcare request slip on October 18, 2019, until he went to the hospital on March 23, 2020. Mr. Wiseman needs to explain what he told each of them, when he told them, what they did in response, and why he believes they were deliberately indifferent.

ECF 6 at 3. The amended complaint alleges Medical Director Dorthy Livers deprived him of medication, access to medical care, and outside medical treatment. However, it does not say what medication, what medical care, or what outside treatment was prevented. Nor does he say when any of those things happened, nor what if anything he ever told Director Livers. These allegations provide insufficient facts to show she denied him constitutionally adequate medical care.

A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do

6

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

The amended complaint alleges Dr. Liaw assessed him for asthma, breathing, vitals, and weight during a chronic care visit on an unknown date. It alleges at that visit he told Dr. Liaw he was vomiting, having cold sweats, fatigue, dizziness, weight loss, blood in his urine, swollen feet, and problems using the restroom and ambulating. He alleges Dr. Liaw told him to put in a healthcare request slip for those concerns. The amended complaint does not mention Mr. Wiseman seeing Dr. Liaw on any other occasion. Chronic care appointments are different from acute care appointments with a physician. "Compliance assessment, negotiation, nutrition advice, preventive services and exercise advice [are] most descriptive of chronic care visits, while procedures, physical examination, feedback on evaluation of results and health education best characterized acute care visits." *Time Use During Acute And Chronic Illness Visits To A Family Physician*, Family Practice Journal by Oxford University Press, Volume 20, Issue 4, August 2003, https://academic.oup.com/fampra/article/20/4/474/625251. Mr. Wiseman attempted to discuss unrelated acute care issues during a chronic care appointment. The complaint does not provide facts showing Dr. Liaw was deliberately indifferent by telling Mr. Wiseman to put in a healthcare request slip to schedule an acute

7

care visit to discuss those unrelated concerns. These vague allegations don't provide sufficient facts to show Dr. Liaw denied him constitutionally adequate medical care. Neither do they explain how or why he was examined on December 13, 2019, by someone who found he had no heart problems nor how he obtained authorization for heart valve replacement surgery on March 30, 2020, at St. Franciscan Hospital.

Finally, the amended complaint alleges Nurse Cody deprived him of medication during a sick call visit, failed to provide him timely emergency treatment, failed to give him prompt medical attention for an injury and infection, or to assist him with purchasing medication from commissary, exercising, and drinking water. Again, the allegations are vague even though he was told in the prior screening order that he needed to provide details. The amended complaint does not say when any of these events allegedly occurred. It does not say what medication he was denied, why he needed it, whether it had been prescribed, or what injury he suffered as a result. It does not say what injury or infection he had nor how Nurse Cody could have known he needed medical treatment. Nor does it explain what medication he wanted nor why she should have helped him purchase it from commissary. The allegation that she did not help him exercise or drink water is also confusing. None of these allege facts from which it can be plausibly inferred that Nurse Cody denied Mr. Wiseman constitutionally adequate medical care.

This amended complaint does not state a claim. When his first complaint did not state a claim, Mr. Wiseman was permitted to file an amended complaint to cure his defective pleadings. Though he filed an amended complaint, it too does not state a claim. This case will now be dismissed.

For these reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915A because it does not state a claim for which relief can be granted.

SO ORDERED.

August 18, 2021

*s/ Damon R. Leichty*
Judge, United States District Court